IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

RICHARD J. BOURNE,

    Plaintiff,

v.                             CIVIL ACTION NO. 1:12-04086

MAPOTHER & MAPOTHER, P.S.C.,
et. al.

    Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

    Pending before the court is defendants' motion for summary judgment (Doc. No. 27).  For the reasons that follow, the motion is granted in its entirety.

I.   <u>Factual and Procedural Background</u>

    Defendant Mapother & Mapother, P.S.C. ("Mapother") is a law firm based in Louisville, Kentucky that engages in debt collection.  Complaint at ¶ 2.  Defendant Steven Mulrooney is a Mapother attorney.  <u>Id.</u> at ¶ 3.  Plaintiff, Richard Bourne, had two delinquent accounts with the Norfolk & Western Poca Division Federal Credit Union which were referred to Mapother for collection services.  Complaint at ¶¶ 4-7.  Plaintiff, contesting these debts on the basis that they were fraudulently created by employees of the credit union, notified Mapother on October 14, 2011 that he was represented by an attorney.  <u>Id.</u> at ¶ 8; Doc. No. 28-1 at 9.  Plaintiff alleges that despite this

1

notice of representation, defendant made numerous telephone calls to plaintiff's residence between January 2012 and August 2012 in an attempt to collect the aforementioned debts.

Mapother does not deny making phone calls to the phone number 304-589-6655, plaintiff's home phone number.  In fact, defendants provide evidence of twenty-seven calls made between January and August of 2012.  See Doc. No. 28-3 at 12. Defendants assert that they were attempting to contact Maxine Bourne, plaintiff's aunt, with regards to the collection of a judgment entered against her for the balance due on her credit card account.  The mix-up apparently arose when TRAK America, an agency that refers delinquent accounts to law firms, sent information concerning Maxine Bourne's delinquent credit card account to Mapother.  The primary telephone number given by TRAK America for Maxine Bourne was 304-589-6655, plaintiff's home telephone number.  The unrefuted evidence supports defendants' contentions concerning who Mapother was trying to reach at the called number.  See Doc. No. 28-2, depo. of Jeffrey Kelly; Doc. No. 28-3, affidavit of Kevin Gillinghham.

All of the phone calls were made by Mapother's auto dialer, an automated software system that places calls to debtors.  Doc. No. 28-2 at 3.  Plaintiff only answered one of the phone calls made by Mapother's auto dialer because he recognized Mapother's number on the caller identification based on his previous

2

dealings with Mapother concerning the debts he claims were
fraudulently created.  Doc. No. 28-5 at 2, depo. of plaintiff.
Plaintiff never spoke to a Mapother representative, and he never
identified himself as Richard Bourne.  Id.  Additionally,
Mapother did not leave any messages on plaintiff's answering
machine.  Id.

On June 28, 2013, plaintiff filed a complaint against
defendants in the Mercer County Circuit Court of West Virginia.
Plaintiff alleged violations of the West Virginia Consumer
Credit and Protection Act ("WVCCPA"), negligence, intentional
infliction of emotional distress, and invasion of privacy.  On
August 6, 2013, defendants removed the case to this court on the
basis of diversity jurisdiction.  Plaintiff did not contest
removal, and the court has made an independent determination
that the court has jurisdiction.  The instant motion for summary
judgment was filed by defendants on September 24, 2013, seeking
summary judgment on all counts.

II.  Summary Judgment Standard

In evaluating summary judgment motions, Rule 56(a) of the
Federal Rules of Civil Procedure provides that "[t]he court
shall grant summary judgment if the movant shows that there is
no genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  Material facts are
those necessary to establish the elements of a party's cause of

3

action.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).  A genuine issue of material fact exists if, in viewing
the record and all reasonable inferences drawn therefrom in the
light most favorable to the non-moving party, a reasonable juror
could return a verdict for the non-movant.  Id.

The moving party has the burden of establishing that there
is an absence of evidence to support the nonmoving party's case.
Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Even if
there is no dispute as to the evidentiary facts, summary
judgment is not appropriate where the ultimate factual
conclusions to be drawn are in dispute.  Overstreet v. Kentucky
Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).  If the
moving party meets its burden, then the non-movant must set
forth specific facts that would be admissible in evidence that
demonstrate the existence of a genuine issue of fact for trial.
Celotex, 477 U.S. at 322-23.

III.  Analysis

    A. Count I – WVCCPA Claims

Count I of plaintiff's complaint alleges that defendants'
actions violated various provisions of the WVCCPA.  See
Complaint at ¶¶ 10-12.  More specifically, plaintiff alleges
violations of sections 46A-2-125, 46A-2-125(d), and 46A-2-128(e)
of the West Virginia Code.  "The WVCCPA is a 'comprehensive
consumer protection' law that incorporates elements of the

4

Uniform Consumer Credit Code, the National Consumer Act, and older West Virginia statutes." Countryman v. NCO Financial System, Inc., Civil Action No. 5:09-cv-0288, 2009 WL 1506720 at *2 (S.D.W. Va. 2009)(Johnston, J.)(quoting Cadillac v. Tuscarora Land Co., 412 S.E.2d 792, 794 (W. Va. 1991)). The Act provides a statutorily created cause of action against debt collectors and provides that aggrieved debtors may recover actual damages, attorney's fees, and a statutory penalty of "not less than one hundred dollars and not more than one thousand dollars." W. Va. Code. § 46A-5-101(1). This $1,000 maximum penalty was set in 1974 and indexed to the consumer price index. Id. § 46A-5-106. Today, therefore, the maximum penalty is approximately $4,652. A separate penalty may be imposed for each WVCCPA violation.[1] See Sturm v. Providian Nat'l Bank, 242 B.R. 599, 603 (S.D.W. Va. 1999) (Haden, C.J.).

The West Virginia Supreme Court of Appeals has consistently stated that the WVCCPA is to be given a broad and liberal construction:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As

---

[1] The fact that a separate penalty can be imposed for each violation explains why this court has jurisdiction. Given that there are roughly twenty-seven alleged violations in this case, the amount in controversy well-exceeds $75,000, and the parties are diverse.

suggested by the court in State v. Custom Pools, 150
Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be
our primary objective to give meaning and effect to
this legislative purpose." Where an act is clearly
remedial in nature, we must construe the statute
liberally so as to furnish and accomplish all the
purposes intended.

State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc., 461

S.E.2d 516, 523 (W. Va. 1995)(internal quotations omitted).

Other than this directive to give the WVCCPA a liberal

interpretation, the West Virginia Supreme Court of Appeals has

not had occasion to address the specific provisions raised in

plaintiff's complaint with any detail. As such, very little

controlling authority exists to guide this court as to the

WVCCPA claims. Fortunately, federal diversity cases

interpreting the WVCCPA provisions raised by plaintiff provide

valuable persuasive precedent. Additionally, plaintiff argues

that the court should look to the analogous federal Fair Debt

Collection Practices Act ("FDCPA") given this lack of guidance

from the West Virginia Supreme Court of Appeals. Given the near

identical language in the comparable statutes, the numerous

FDCPA cases are very helpful. The court will address each

WVCCPA provision in turn.

1. § 46A-2-125

West Virginia Code § 46A-2-125 provides that "[n]o debt

collector shall unreasonably oppress or abuse any person in

connection with the collection of or attempt to collect any

6

claim alleged to be due and owing by that person or another."
This provision sets out the general principle proscribing
oppressive and abusive conduct by debt collectors.  It then
lists conduct which violates that prescription including the
primary conduct complained of by plaintiff – "[c]ausing a
telephone to ring or engaging any person in telephone
conversation repeatedly or continuously, or at unusual times or
at times known to be inconvenient, with intent to annoy, abuse,
oppress or threaten any person at the called number."  W. Va.
Code. § 46A-2-125(d).[2]

    Defendants argue that there is no evidence to show that
defendants called "repeatedly or continuously, or at unusual
times," or that Mapother had the requisite intent to annoy,

---

[2] The analogous provision of the FDCPA reads:

> A debt collector may not engage in any conduct
> the natural consequence of which is to harass,
> oppress, or abuse any person in connection with
> the collection of a debt.  Without limiting the
> general application of the foregoing, the
> following conduct is a violation of this section:
> . . . (5) Causing a telephone to ring or engaging
> any person in telephone conversation repeatedly
> or continuously with intent to annoy, abuse, or
> harass any person at the called number.

15 U.S.C. § 1692d.  The similarity of the language renders cases
interpreting this provision very useful to the disposition of
defendants' motion.  Notably, federal courts have held that the
FDCPA's language should be construed broadly to give effect to
the remedial purpose of the statute much like the West Virginia
Supreme Court of Appeals has stated about the WVCCPA.  See Brown
v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006).

7

abuse, oppress or threaten.  Doc. No. 28 at 6-7.  Defendants
place primary focus on the fact that Mapother intended to
contact Maxine Bourne and not plaintiff.  Id.  Plaintiff
responds that the doctrine of transferred intent can be applied
to transfer the alleged intent to annoy, abuse, oppress or
threaten Maxine Bourne to plaintiff.  Doc. No. 29 at 5-6.

Notwithstanding plaintiff's assertion that the doctrine of
transferred intent applies in the WVCCPA context, the court need
not reach that issue.  No record evidence indicates that
defendants had the requisite intent to annoy, abuse, oppress or
threaten even Maxine Bourne.  As such, there was no intent that
could be transferred.  The requisite intent to annoy, abuse,
oppress, or threaten can be established by the volume of
telephone calls or the nature of the telephone conversations.
See Ferrell v. Santander Consumer USA, Inc., 859 F. Supp. 2d
812, 816 (S.D.W. Va. 2012).  The phone calls to plaintiff's
residence were made from January to August of 2012.  Doc. No.
28-3 at 12.  The earliest time in the day that Mapother called
plaintiff's number was 8:19 a.m., and the latest was 10:13 a.m.
- hardly unusual times of the day.  Id.  Mapother never
contacted plaintiff more than once in a single day, and the
calls occurred at intervals of about once per week.  Id.  The
volume and nature of these communications do not evince an
intent to annoy, abuse, oppress or threaten.  Even accepting

that twenty-seven phone calls over the course of eight months at normal times of the day could be considered causing the telephone to ring "repeatedly or continuously" – a proposition that is highly doubtful – plaintiff has failed to establish that Mapother intended to annoy, abuse, oppress or threaten plaintiff or anyone else.  As such, defendants are entitled to summary judgment on plaintiff's § 46A-2-125(d) claim.

Plaintiff also alleges a claim under the § 46A-2-125 umbrella provision that generally prohibits debt collectors from unreasonably oppressing or abusing anyone in connection with the collection of a debt.  As discussed above, even when viewed in the light most favorable to plaintiff, the evidence completely lacks any indication that defendants intended to or in fact did oppress or abuse plaintiff.  Twenty-seven phone calls over the span of eight months at normal times of the day is not abusive or oppressive as required to fall within the acts proscribed by §46A-2-125 without additional evidence of abuse.  As such, defendants are also entitled to summary judgment as to plaintiff's general § 46A-2-125 claim.

A review of cases interpreting § 46A-2-125 and the analogous FDCPA provision bolsters these conclusions.  Judges in this district have granted summary judgment to defendants on § 46A-2-125(d) claims in cases involving twenty-one calls over the course of six months and thirty-five calls.  See White v. Ally

9

Fin. Inc., 2:12-cv-00384, 2013 WL 1857266 (S.D.W. Va. May 2, 2013) (Goodwin, J.); Adams v. Chrysler Fin. Co., LLC, 5:11-cv-00914, 2013 WL 1385407 (S.D.W. Va. Apr. 3, 2013) (Berger, J.) ("[T]he Court cannot reasonably infer 'unreasonable or oppressive or abusive contact' from Defendant's records" which reflected "'more than thirty-five (35) attempts to contact Plaintiff.'"). Like White and Adams, the evidence in this case simply does not demonstrate the intent required to make out a violation of § 46A-2-125(d).

The cases in this district where summary judgment was denied to WVCCPA defendants involved many more telephone calls and other evidence which suggested abuse. For example, the court in Ferrell denied summary judgment on the basis of evidence that indicated that seventy-two calls were made to plaintiffs over a two-month span of time. 859 F. Supp. 2d 812, 859. Even with this substantial number of phone calls in a relatively short time frame, the court stated that "[w]hile defendants are correct that evidence in the record demonstrating such conduct may be modest, it is enough to survive summary judgment." Id. If seventy-two calls over a two-month span is "modest", twenty-seven calls over an eight-month span is extremely modest and not enough to survive summary judgment without additional evidence of intent to annoy, abuse, oppress, or threaten. Likewise, in Duncan v. JP Morgan Chase Bank, N.A.,

the court denied summary judgment on the basis of evidence of at
least sixty-eight calls over an eleven-month time frame.  5:10-
cv-01049, 2011 WL 5359698 at *4 (S.D.W. Va. Nov. 4, 2011)
(Berger, J.).  Evidence in Duncan also indicated that abusive
language was used in at least one of the phone calls – a fact
that more directly displays the requisite intent than the volume
of telephone calls.  Id. at *4.  It is undisputed in the instant
case that no such abusive language was ever utilized by
defendants given that plaintiff never actually spoke on the
phone to a Mapother representative.

     Finally, the cases interpreting the analogous FDCPA
provision – cases which plaintiff encouraged this court to
consult – are even more supportive of defendants' summary
judgment motion.  These cases generally go as far as asserting
that even daily phone calls, without other abusive conduct are
insufficient to raise a triable issue of fact for the jury.  See
Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 WL 3190359, at
*7 (E.D. Mich. Sept. 30, 2009) ("[A] debt collector does not
necessarily engage in harassment by placing one or two
unanswered calls a day in an unsuccessful effort to reach the
debtor, if this effort is unaccompanied by any oppressive
conduct such as threatening messages."); Arteaga v. Asset
Acceptance, LLC, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010)
(finding that "daily" or "nearly daily" phone calls alone fail

to raise an issue of fact for a jury to determine whether the conduct violates § 1692d and § 1692(d)(5)); Tucker v. CBE Grp., Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (noting that despite 57 calls over a 20-day period being "somewhat high," the conduct still did not violate § 1692(d)(5) as a matter of law where defendant left six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message); Durthaler v. Accounts Receivable Mgmt., Inc., 854 F. Supp. 2d 485 (S.D. Ohio 2012) (finding no FDCPA violation even though debt collector made 30 calls to debtor's phone numbers, one of which was made after the debt collector was informed that the number did not belong to the debtor, and two calls to debtor's roommate in 73 day period); Katz v. Capital One, No. 1:09-cv-1059, 2010 WL 1039850 (E.D. Va. March 18, 2010) (15-17 calls, not more than two in a day and not at inconvenient times, after debtor notified debt collector of attorney representation did not violate the FDCPA).

The complete lack of evidence indicating that Mapother had the requisite intent to annoy, abuse, oppress or threaten, combined with the case law where courts have granted summary judgment to debt collectors in the face of much harsher conduct, indicates that defendants are entitled to judgment as a matter of law.  As such, summary judgment is granted to defendants as to plaintiff's § 46A-2-125 and § 46A-2-125(d) claims.

12

2. § 46A-2-128(e)

Plaintiff also alleges that defendant violated West Virginia Code § 46A-2-128 which prohibits "unfair or unconscionable means to collect or attempt to collect any claim." Included amongst these unfair means is "[a]ny communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained . . . ." W. Va. Code § 46A-2-128(e). In a letter addressed to defendant Steven Mulrooney dated October 14, 2011, plaintiff's attorney informed Mr. Mulrooney that plaintiff had retained his law firm with regards to the delinquent accounts with the Norfolk & Western Poca Division Federal Credit Union that plaintiff claims were fraudulently created. Doc. No. 28-1 at 9-10. Plaintiff's attorney requested that defendants cease further communications with plaintiff except through the law firm. Id. Defendants do not deny receiving this letter, but again rely on the fact that the telephone calls from January to August 2012 were intended for Maxine Bourne and concerned a totally separate debt. Doc. No. 28 at 7.

The court finds that defendants' are entitled to summary judgment on this claim. The undisputed record evidence indicates that the phone calls made after the receipt of the letter were intended for Maxine Bourne and not plaintiff.

13

Additionally, the calls were placed to seek recovery of a judgment entered against Maxine Bourne and not to collect plaintiff's alleged debt to Norfolk & Western Poca Division Federal Credit Union – the express matter for which plaintiff's attorney was retained.  See Doc. No. 28-1 at 9 (the letter specifically states that it is in regards to "NCS, Inc. v. Richard J. Bourne" and cites the specific file number). Plaintiff has provided no evidence to indicate that the phone calls were intended for anything but to speak to Maxine Bourne concerning her delinquent credit card account.  The communications were not with plaintiff, but with Maxine Bourne.

Also critical to this determination is the requirement of the statute that "it appears that the consumer is represented by an attorney."  W. Va. Code § 46A-2-128(e) (emphasis supplied). This language indicates something more than strict liability. There exists a knowledge requirement, however minimal, before liability can attach.  This comports with notions of justice given that WVCCPA violations expose violators to very harsh civil penalties regardless of actual damages.  See Vanderbilt Mortgage & Fin., Inc. v. Cole, 740 S.E. 2d 562, 568 (W. Va. 2013) (holding that a WVCCPA award of civil penalties is not conditioned on an award of actual damages).  Mapother only had one telephone number for Maxine Bourne on file, and they were fully within their rights to attempt to contact her.  No

14

information indicated that she was represented by an attorney. However it came about, the unfortunate mix-up in telephone numbers made it appear to defendants that they were contacting Maxine Bourne.  As such, the minimal knowledge required to violate § 46A-2-128(e) cannot be imputed to defendants.

While no case has been decided with facts similar to this case, White v. Ally Fin. Inc. provides a useful analogy.  2013 WL 1857266, at *4 (S.D.W. Va. May 2, 2013).  There, the court granted summary judgment to the defendants on a § 46A-2-128(e) claim where the defendants had knowledge of the plaintiff's representation with respect to her personal bankruptcy, but they nonetheless contacted her in an attempt to collect a claim.  Id. at *4.  The court stated that "[t]he plaintiff's representation by an attorney for her personal bankruptcy has no bearing on whether she appears to be represented by an attorney with respect to the debt at issue."  In the same vein, Mapother's knowledge of plaintiff's representation with respect to the alleged Norfolk & Western Poca Division Federal Credit Union debts has no bearing on whether Maxine Bourne appears to be represented by an attorney with respect to her credit card debt. The debtors are different, and the debts are different.

This result is in tune with federal cases interpreting the analogous FDCPA provision.  The more precisely drafted analogous FDCPA provision provides that "a debt collector may not

15

communicate with a consumer in connection with the collection of
any debt . . . if the debt collector knows the consumer is
represented by an attorney with respect to such debt . . . ." 
15 U.S.C. § 1692c(a)(2).  The "with respect to such debt"
language makes clear that the attorney representation must be
for the particular debt for which the communication is made.[3]
Indeed, cases interpreting this provision have generally held
that it is not violated when a debt collector contacts a
consumer rather than his attorney regarding a new debt despite
knowledge of attorney representation with respect to previous
debts.  See, e.g., Udell v. Kansas Counselors, Inc., 313 F.
Supp. 2d 1135 (D. Kan. 2004) (finding no FDCPA violation where
debt collector communicated directly with consumer regarding
newly-assigned debts despite knowledge of attorney

---

[3] This more precise language highlights the absurd outcomes that
could result from the less precise West Virginia provision.  A
hypothetical illustrates this point.  Say an individual has
retained an attorney for a personal injury claim unrelated to
the collection of a debt.  At the same time, that individual
becomes delinquent on an account which gets referred to a debt
collector for collection services.  This debt collector also has
information concerning the personal injury claim and knows that
plaintiff has retained an attorney for it.  If the debt
collector contacted this individual in regards to the collection
of the debt, they would technically be communicating "with a
consumer whenever it appears that the consumer is represented by
an attorney."  W. Va. Code § 46A-2-128(e).  But this cannot be
the legislature's intent in enacting § 46A-2-128(e) – a statute
concerned with debt collection practices.

representation for previous debts); <u>Graziano v. Harrison</u>, 950 F.
2d 107, 113 (3d Cir. 1991) (same result).

The court is aware of its duty to construe the WVCCPA
liberally to accomplish its legislative purpose.  However, the
legislative purpose of the WVCCPA is not to impose harsh civil
penalties for simple mistakes.  Rather, it is intended to
prevent "unfair, illegal, and deceptive acts or practices."
<u>State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.</u>, 461
S.E.2d 516, 523 (W. Va. 1995).  This is underscored by the fact
that § 46A-2-128 prohibits "unfair or unconscionable" means to
collect a debt.  There is nothing unfair or unconscionable about
Mapother placing phone calls to Maxine Bourne at the only phone
number it had for her to seek a resolution of a debt.  Summary
judgment is granted to defendants as to plaintiff's § 46A-2-
128(e) claim.

B. <u>Count II – Negligent Supervision</u>

In Count II, plaintiff alleges that defendants "negligently
failed to train, supervise, monitor, or otherwise control their
agents, servants, and/or employees to insure that they do not
violate the WVCCPA."  Complaint at ¶ 14.  Plaintiff claims that
implicit in the § 46A-2-125 prohibition of oppressive or abusive
behavior is a duty for debt collectors to train and supervise
their agents and employees to insure that the correct debtors
are being contacted.  Doc. No. 29 at 7.  Plaintiff asserts that

17

the failure to verify the correct telephone number of plaintiff
and Maxine Bourne amounted to a breach of this alleged duty.
Id. at 7-8.  Defendant, in moving for summary judgment on this
count, argues that no facts support the claim and questions the
viability of a negligent supervision cause of action in West
Virginia.  Doc. No. 28 at 8-9.

The facts at the heart of this claim are not in dispute.
TRAK America provided the phone number 304-589-6655 (plaintiff's
actual home number) to Mapother as Maxine Bourne's number so
that Mapother may seek to recover on Maxine Bourne's delinquent
credit card account.  Doc. No. 28-3 at 2.  TRAK America provided
three telephone numbers to Mapother for plaintiff with respect
to his alleged debts: 304-589-3614 (listed first); 304-589-6655
(his actual number); and 304-589-5387.  Id. at 2-3.  Mapother
does not do anything to verify these numbers, and they readily
admit that they use the first listed number rather than trying
them all out.  See Doc. No. 28-2 at 2, 5, and 6; Doc. No. 28-6
at 2-3.  It appears clear from the record that Mapother had no
internal checks to insure that a wrong number was not called.
Unless and until Mapother was informed by the individual being
called that they were not the right person, an event that never
occurred in this case, Mapother would presumably continue to
call the incorrect person.  Mapother did not, however, have a

18

system in place to make this discovery on their own.[4]  Being no genuine issue as to a material fact, the question becomes whether defendant is entitled to judgment as a matter of law.

A negligence action based on the failure to supervise or train is one of primary liability.  That is, the principal negligently supervises its agents such that harm proximately results to a third party.  This is different than the vicarious liability imposed by the doctrine of respondeat superior.  A direct act or omission by a principal is required to hold it primarily liable under a negligent supervision theory.  The West Virginia Supreme Court of Appeals has indicated that a claim for negligent supervision requires an independent finding of negligence on the part of a supervised employee.  Taylor v. Cabell Huntington Hosp., Inc., 538 S.E.2d 719, 725 (W. Va. 2000) ("The appellant's claim of negligent supervision must rest upon a showing that the [employer] failed to properly supervise [the employee] and, as a result, [the employee] committed a negligent act which proximately caused the appellant's injury."); see also Heslep v. Americans for African Adoption, Inc., 890 F. Supp. 2d

---

[4] Presumably, these facts are the reason why defendants did not raise a defense to the WVCCPA claims under § 46A-5-101(8) which provides that no liability can be imposed when a "creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error . . . ."  That is, they likely could not show the maintenance of procedures designed to avoid the error.

671, 687 (N.D.W. Va. 2012) (dismissing negligent supervision claim because plaintiffs did not allege negligence on the part of an employee of the defendants).  This is really a different way to state an ancient principle of the tort of negligence – there can be no recovery absent a showing of damages.  When an employer negligently fails to supervise an employee, but such negligence does not result in a negligent act on the part of the employee that harms another, the failure to supervise did not proximately result in damages.

Here, the alleged duty violated by defendants is the duty of debt collectors to train and supervise their agents "to insure that they do not violate the WVCCPA."  Doc. No. 29 at 7. As discussed above, there has been no violation of the WVCCPA. As such, plaintiff cannot prevail on a negligent supervision theory because there are no damages from the alleged negligent supervision.  Even if the facts in the record which indicate that Mapother had no system or process to verify the accuracy of debtors' phone numbers amounts to a breach of a duty to supervise and monitor their agents, plaintiff has not been harmed by this breach.  Summary judgment as to plaintiff's negligent supervision claim is therefore granted to defendants.

Additionally, plaintiff has only alleged mental injuries. Plaintiff alleges he has been "annoyed, inconvenienced, harassed, bothered, upset, angered, harangued, and otherwise

caused indignation and distress" by defendants' alleged negligence.  Complaint at ¶ 15.  As plaintiff alleges no physical injury, this is essentially a negligent infliction of emotional distress claim.  The West Virginia Supreme Court of Appeals has stated that "'[a]n individual may recover for negligent infliction of emotional distress absent accompanying physical injury upon a showing of facts sufficient to guarantee that the emotional damages claim is not spurious." Marlin v. Bill Rich Const., Inc., 482 S.E.2d 620, 637 (W. Va. 1996) (citing Ricottilli v. Summersville Memorial Hosp., 425 S.E.2d 629 (W. Va. 1992)).  There being no physical injury and a complete lack of evidence to indicate the serious nature of plaintiff's emotional torment from the phone calls, plaintiff cannot recover on a negligence theory.

     C. Count III – Intentional Infliction of Emotional Distress

In Count III, plaintiff alleges an intentional infliction of emotional distress (IIED) claim.  Defendants seek summary judgment on this count, arguing that there is no evidence to support a claim of IIED.  Doc. No. 28 at 10.  Notably, plaintiff did not address defendants' arguments concerning this claim in his response in opposition.  Because "the opposing party has the burden of showing that a genuine dispute exists" once a motion for summary judgment is made, this fact is likely sufficient to

grant defendants' motion as to Count III.  Hooven-Lewis v. Caldera, 249 F. 3d 259, 265 (4th Cir. 2001); see also Eady v. Veolia Transp. Servs., Inc., 609 F. Supp. 2d 540, 560-61 (D.S.C. 2009) ("The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action.").  Regardless of the effect of plaintiff's failure to address his IIED claim, it is clear that defendants' are entitled to summary judgment on this count based on the merits.

In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must satisfy the following elements:

> (1) The defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Travis v. Alcon Laboratories, Inc., 504 S.E.2d 419, 425 (W. Va. 1998) (internal citations omitted).  The extreme and outrageous requirement is a notoriously high burden to meet.  It is not enough that an actor act with tortious or even criminal intent.  The actions must "be regarded as atrocious, and utterly

22

intolerable in a civilized community." <u>Tanner v. Rite Aid of West Virginia, Inc.</u>, 461 S.E.2d 149, 157 (1995) (quoting from the comments to the <u>Restatement of Torts (Second)</u>, § 46). Twenty-seven unanswered phone calls over the course of eight months at regular hours of the day cannot be regarded as atrocious or utterly intolerable in a civilized community. Even if defendants intended to inflict emotional distress, the uncontradicted evidenced indicates that defendants intended to contact Maxine Bourne and not plaintiff. The doctrine of transferred intent is not appropriate in the IIED context given the personal nature of the tort. <u>See generally</u> William L. Prosser, <u>Insult and Outrage</u>, 44 Cal. L. Rev. 40, 56-59 (1956).

The court finds that plaintiff failed to show that defendants' conduct satisfied any of the IIED elements. The court finds that there is no genuine dispute of material facts as to Count III, and defendants' are entitled to judgment as a matter of law. Defendants' motion with respect to the IIED claim is granted.

D. <u>Count IV – Invasion of Privacy</u>

Count IV of plaintiff's complaint alleges a claim for invasion of privacy. Defendants seek summary judgment on this count, arguing that the evidence does not support the claim and that they could not have had the required intent to intrude upon plaintiff's seclusion because they intended to reach Maxine

23

Bourne rather than plaintiff.  Doc. No. 28 at 11.  Plaintiff
again responds by contending that the doctrine of transferred
intent applies.

West Virginia recognizes the common law claim of invasion
of privacy, and it includes the "unreasonable intrusion upon the
seclusion of another."  Crump v. Beckley Newspapers, Inc., 320
S.E.2d 70, 83 (W. Va. 1984).  "Unreasonable intrusion upon
another's seclusion occurs when '[o]ne . . . intentionally
intrudes, physically or otherwise, upon the solitude or
seclusion of another or his private affairs or concerns, . . .
if the intrusion would be highly offensive to a reasonable
person."  Harbolt v. Steel of West Virginia, Inc., 640 F. Supp.
2d 803, 817 (S.D.W. Va. 2009)(Chambers, J.)(quoting Restatement
(Second) of Torts § 652B).[5]

---

[5] Comment b. to § 652B of the Restatement reads:

> The invasion may be by physical intrusion into a
> place in which the plaintiff has secluded
> himself, as when the defendant forces his way
> into the plaintiff's room in a hotel or insists
> over the plaintiff's objection in entering his
> home. It may also be by the use of the
> defendant's senses, with or without mechanical
> aids, to oversee or overhear the plaintiff's
> private affairs, as by looking into his upstairs
> windows with binoculars or tapping his telephone
> wires. It may also be by some other form of
> investigation or examination into his private
> concerns, as by opening his private and personal
> mail, searching his safe or his wallet, examining
> his private bank account, or compelling him by a

24

The court finds that there is no genuine issue of material fact as to plaintiff's claim for invasion of privacy.  The evidence simply does not support an invasion of privacy claim.  That is, nothing in the record indicates either that defendants intentionally intruded upon plaintiff's seclusion or that the phone calls were "highly offensive to a reasonable person."  As such, plaintiff cannot prevail on an invasion of privacy theory.  See Ferrell v. Santander Consumer USA, Inc., 859 F. Supp. 2d 812, 819 (S.D.W. Va. 2012); Adams v. Chrysler Fin. Co., LLC, 2013 WL 1385407, at *9 (S.D.W. Va. Apr. 3, 2013).  Summary judgment on this count is granted in favor of defendants.

IV.  Conclusion

As outlined more fully above, defendants' motion for summary judgment (Doc. No. 27) is GRANTED.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record.

IT IS SO ORDERED this 12th day of February, 2014.

ENTER:

David A. Faber
Senior United States District Judge

---

forged court order to permit an inspection of his personal documents.